HERBERT B. GARDNER *et al. vs.* ARTHUR LECK *et al.* .

Argued Dec. 22, 1892.   Decided March 29, 1893.

### Mortgage when Subject to Subsequent Mechanics' Liens.

Where the erection of a building is one continuous undertaking, with nothing to suggest an abandonment of the work at any time, a mortgage or other incumbrance or distinct lien, originating subsequently to the commencement of the work upon the ground, or the furnishing of materials at the same place, whether by one general contractor or by independent contractors, must be postponed and subordinated to the lien claims of all who have contributed to the completion of the structure by their labor or materials.   Gilfillan, C. J., and Dickinson, J., dissenting.

### One Lien on Two Houses upon the Same City Lot.

G. agreed to furnish such hardware as the owner of the premises should need to use in the erection of two houses upon one city lot, and did furnish the same as required.   *Held*, that it was not incumbent upon G. to keep separate accounts of the goods furnished for each house, or to file separate lien statements thereon.

### Same.

K. provided artificial stone for walks, and for tiling, and put the same in place in and about both houses.   *Held*, that but one lien statement was necessary.

### Appropriation of Payments.

Where a debtor makes a general payment, his indebtedness being in part secured and in part unsecured, the law, in the absence of specific appropriation by the parties, will apply the payment, first, to the liquidation of the unsecured indebtedness.

### Architect Entitled to Lien.

An architect who has furnished plans for a building, and has advised the owner of the same, and his contractors in reference to the work and the material, pending the construction, is entitled to a lien upon the premises.

### Printing the Return to this Court.

Rule IX. of the supreme court rules, requiring the printing of so much of the return as will clearly and fully present a question arising on appeal, must be observed, unless application is first made for its modification.   In proper cases this rule will be modified so as to render the printing of portions of the return unnecessary.

Appeal by Twiford E. Hughes and Albert C. Robinson, Intervenors, from a judgment of the District Court of Hennepin County, *Canty,* J., entered June 30, 1892, decreeing all the mechanics' liens of the parties to the action to be co-ordinate, and prior and paramount to the mortgages given after the construction commenced.

These intervenors gave a bond to the mortgagee, with condition to protect her mortgage from prior liens on the property, and they intervened in the action on account of this liability.

*Gilfillan, Belden & Willard,* for appellants.

*Woods & Kingman, Roberts & Baxter, Geo. H. White, Alvord C. Egelston, J. K. Doolittle, Kellogg & Stratton, Molyneaux & Peterson, F. C. Harvey, Frederick B. Lathrop, Freeman P. Lane, William H. Briggs, Edward H. Crooker,* and *Edward Savage,* for respondents.

COLLINS, J. Each of these actions, consolidated upon trial, was brought to foreclose liens claimed to exist under the provisions of the noted statute of 1889, (Laws 1889, ch. 200,) mortgagees and other lien claimants being made defendants. In brief, the facts were that in March, 1889, defendant Leck verbally agreed to purchase a certain city lot. The owner then executed a deed to Leck of the east sixty feet. In September following the owner executed another deed to Leck of the balance of the lot, both deeds being delivered and recorded September 18th. Leck commenced the erection of an apartment house on the east sixty feet when he agreed to purchase. This house was completed in December. Late in September he commenced to build another house on the rear of his lot, which was completed late in the following spring. January 1, 1890, he executed and delivered a mortgage to defendant Fitch upon the rear or west seventy-four feet of this lot, which was placed on record six days later. There was no general contract for the erection of either house, so that each lien claimant was an independent contractor. Some performed labor or furnished materials for the westerly house only, and a part of these subsequent to the delivery of the mortgage. Other claimants had worked upon both buildings, or had provided materials for each. There were other mortgages upon the land having precedence over any of the lien claims.

· Because all of the mechanics' liens did not cover both houses, and because the mortgages were upon separate tracts of land, the trial court held it impracticable and inequitable*to sell the lot as one tract, and, for the purposes of sale, divided it into two parcels, exactly as it had been conveyed to Leck.   The court further held, and judgment was so entered, subordinating the Fitch mortgage, upon the westerly parcel, to all the liens thereon.   Other facts having special reference to certain of the lien claims will be mentioned as we proceed.   The chief question now before us is the correctness of the ruling of the trial court whereby it was determined that lien claims for labor performed and materials furnished after the Fitch mortgage was executed and placed upon record, by persons who up to that time had made no contract with Leck, were superior to the mortgage.   This was the condition of four claims, that of the respondents Farnham Company, the Herzog Company, W. K. Morison & Co., and Mr. Tanner.

We are thus required to again construe, and upon a most important question, a statute which has brought before our courts more litigation in the three and a half years of its existence than was occasioned by the act or acts on the same subject which preceded it for a period of more than twenty-five years,—litigation which has proven so expensive, and hence disastrous, to all parties, that the object of the law, as expressed in its title, seems to be a pronounced snare and delusion.   The variety of questions which can be presented for judicial determination seems to be endless, and these questions have so arisen that our construction of the different sections found in the act has been piecemeal, and has been rendered more difficult from the fact that, although nearly every state in the Union has a lien law, (most of them adequate in every particular,) this appears to be *sui generis,* and we have been obliged to pass upon it without the aid of helpful precedents.   Because the law has been so fruitful of questions, and because of the detached manner in which they have come up, the one now before us, which involves the *rights of an intervening mortgagee where no general contract has been made for the work, and where each lien claimant contracted independently of the others with the owner of the land,* has not been squarely presented

until this time, although the attention of the court has frequently been called to it, its importance and embarrassments. It was referred to in the main opinion in *Finlayson* v. *Crooks*, 47 Minn. 74, (49 N. W. Rep. 398, 645.) Although the liens involved in that case grew out of separate and independent contracts with the owner, and there was an intervening mortgage, the real question was as to the power of the court in actions to foreclose mechanics' liens to pass upon and adjudicate the rights of mortgagees. The court below had made two classes of lien claimants,—one class having precedence over the mortgage, the other being postponed to it,—upon the authority, presumably, of *Crowell* v. *Gilmore*, 18 Cal. 370, and *Choteau* v. *Thompson*, 2 Ohio St. 114. Referring to this action of the trial court, an opinion was expressed, unnecessarily for a determination of the case, that such method of distribution was based upon unsound reasoning, and in direct conflict with the plain provisions of ch. 200, *supra*, § 10, requiring the proceeds of a sale to be distributed ratably among the lien claimants, and without priority among themselves. This court went further, and expressed an opinion that, in a case where a mortgage lien had intervened, there should be first set aside out of the proceeds of the sale a sum equal to the amount of the liens prior to that of the mortgagee, that he should then be paid in full, and, if anything be left, it should be added to the amount first set apart, the whole to be distributed *pro rata* among all the lien claimants, thus putting all mechanics and material men on the same footing. Upon motion for reargument it was announced that, as the proper method of distribution was not really before us in that case, the question was an open one, and for future consideration. Nor did this question arise in *Glass* v. *Freeburg*, 50 Minn. 386, (52 N. W. Rep. 900,) in which *Finlayson* v. *Crooks, supra, Hill* v. *Aldrich*, 48 Minn. 73 N. W. Rep. 1020, and *Haupt Lumber Co.* v. *Westman*, 49 Minn. 397, (52 N. W. Rep. 33,) were briefly referred to.

In the *Glass Case* it was held that, where a building is constructed under one entire contract made between the owner and an original contractor, the liens of all subcontractors attach by relation as of the date of the commencement of the work, and have a preference over a mortgage on the premises executed by the owner subsequent to

that date. It is the contention of respondents' counsel that this conclusion is decisive of the case at bar in their favor, not because of the line of reasoning therein adopted, (which is said to be somewhat faulty,) but because the conclusion was right, and cannot be adhered to without affirming on the main issue the judgment herein appealed from. We must admit that counsel's position is correct, and, further, that the lien rights of the claimants in that action depended upon the statute, and not by virtue of any substitution to rights which were held and might have been enforced by the chief contractor. He was entitled to a lien, but asserted none; his right had terminated by inaction, and could not be claimed by others. He could have enforced a lien claim, which would have attached as an entirety, at the date he commenced work or furnished the first item of material, and which would have had precedence, as a whole, over the mortgage; but he failed to assert his rights.

The statute (section 1) grants the lien right to whoever performs labor or furnishes material by virtue of a contract with, or at the instance of, the owner, his agent, trustee, contractor, or subcontractor. It contemplates that a lien may be claimed by both contractor and subcontractor, and section 10 expressly provides for such a condition of affairs; but it nowhere gives or recognizes substitutionary rights, so as to authorize one claimant to advance and attach his own rights to those which might have been acquired by another. So that the date when a lien attaches upon the property, if a lien statement be filed, cannot be made to depend upon the relationship which the claimant has or had to the person who has omitted to assert his rights; and a claimant cannot demand priority in right over other persons by showing that he was a subcontractor, and that his contractor could have had priority, if he had so insisted. The date when each lien shall attach is expressly fixed by statute. On principle, the argument made in support of the subcontractors whose claims were considered in *Glass* v. *Freeburg* cannot be justified.

A majority of this court are clearly of the opinion that the views expressed in the *Finlayson Case* are unsound. If such a method of distribution were adopted, it would result in deferring to some extent

the lien claims of those who had performed work or furnished materials before the execution of the mortgage to its lien in every case where the premises sold for more than sufficient to pay prior, in point of time, claimants, because those ahead would have to share with those behind the mortgage. It would compel those who had performed their labor or furnished materials upon the strength of an unincumbered title to submit to a possible postponement of their claims to an incumbrance in no manner connected with the improvements, and brought into existence during, or perhaps subsequent to, the fulfillment of their contracts. It would place it in the power of the owner of the real estate to mortgage it so as to substantially affect rights already assured and relied on, and virtually to destroy the statutory security. Significant illustrations of this kind might be multiplied, but are unnecessary. To permit assured rights to be thus displaced, really at the option of the owner, is opposed to the spirit and intent of the law. It is also directly against a plain provision found in section 8, which gives to mechanics and material men the right to perfect a lien, which shall attach and take effect as of the day on which the one commences his work, or the other begins to supply the materials. We cannot adhere to what may be styled the "*Finlayson* Doctrine" without completely ignoring this provision, and, for the sole purpose of complying with that part of section 10 which provides that the lien claimants shall share the proceeds of the sale without priority among themselves, disregarding one explicit direction in the statute to observe another, and to do a rank injustice, when it is possible that both provisions may stand.

It is urged that the doctrine found in the Ohio and California cases before cited might well be adopted, but the chief obstacle in the way of the application of that doctrine lies in the fact that, while regard would be paid to the provision in section 8, the troublesome clause in section 10, as to priority, would, in part, be ignored. If the lien claimants are to share ratably, without priority among themselves, as provided in section 10, full payment of the claims of those ahead of the mortgage, and payment of a percentage, or possibly nothing at all, to those behind, would be a mere pretense at compliance with

the law. There is no provision in the statute on which a division of the lienors into two or more classes can be justified.

Having said probably much more than was essential in regard to construing the statute in support of the *Finlayson* doctrine, or in support of the views of the courts in Ohio and California, we will briefly state why a majority of this court have reached a conclusion that, upon the main question, the judgment appealed from must be affirmed. There is nothing novel or unjust in a law which gives priority to the liens of mechanics and material men over those of other parties, originating subsequent to the commencement of the improvements on the land. In at least twenty states such laws have been enacted, and again and again have they been sustained by the courts. These states are named, and a synopsis of their lien statutes given, in Jones on Liens, (sections 1187 and 1469.) While the law of 1889 is not so positive in its various provisions as it should have been, two prominent features must be kept in mind, as well as the general scope and purpose of the whole act. These features are: First. That the lienor's rights are fixed when he begins his work, or commences to furnish his materials, and, if we are to pay any attention to the spirit of the law, must not by construction be made to hang upon something to occur afterwards, over which he has no control. The lien claimant whose rights are fixed prior to the making of a mortgage must not be displaced by it, and such would be the practical result if the mortgagee's claim is allowed to intervene, and the proceeds of a sale are to be distributed in proportion to the amount due to each lien claimant. Second. The statute explicitly directs this method of distribution, and that the lienors must share "without priority among themselves." To comply with this clause in all cases,—and there are no exceptions,—we must either advance the lien of the mortgage, so that under some circumstances it will practically have precedence over lien claims, or postpone it to all of the claims. There is no middle ground to stand on, and we should be on such ground if we adopted the views of the two courts before mentioned, and subordinated the claims of a part of the lienors to the debt secured by a mortgage. The inevitable

logic of what we have said is that, whenever a mortgage or other incumbrance or distinct lien originates subsequently to the commencement of the work on the ground, or the furnishing of materials at the same place, so that the world may have notice of the proposed improvement, it must yield to the claims of all who have contributed to the completion of the structure with their work or materials. A mortgage placed upon real property subsequent to the commencement of a building, after lien rights have attached, must be subordinated to the liens provided for in chapter 200. The rights of the person who first labors, or those of the material man who first furnishes material, in respect to the time they attach, are fixed by statute; and it was the plain and unmistakable intention of the legislature to date all lien rights from this time, and to place all who may be engaged in a common enterprise — the erection and construction of a building — upon the same footing. Nor can the rights of one claimant be affected by his relationship to another, or by the failure of one or more to prosecute a lien claim.

By way of caution, we add that in the case before us the erection of each building was a continuous undertaking, and prosecuted from beginning to end without an interval to suggest that the work had been abandoned.

This brings us to a consideration of some other questions covered by the assignments of error.

Respecting the contention of counsel for appellants that the materials furnished by respondent Gardner were not so furnished pursuant to the terms of one general contract, we are of the opinion that they were, and that but one lien statement was essential. Leck called upon Gardner, informing him that he intended to build two houses, and that he wished to buy the needed hardware. Gardner consented to sell, and, under this arrangement, furnished his goods from time to time as called for, keeping one general account of the same. Surely it was not incumbent upon the merchant to follow each article to the ground for the purpose of ascertaining in which of the two houses it was used, both being on the same lot. *Maryland Brick Co.* v. *Spilman,* (Md.) 25 Atl. Rep. 297, and cases.

Respondent King provided artificial stone and tiling and put it in

place in and about the buildings,—the horse block and part of the walk, in August, 1889; and the walk between the houses, the steps, and the tiling, in April, 1890. He filed but one lien claim. His work was all done upon one lot, for prices agreed upon before any of it was performed. The work was treated as one transaction, and the property was treated and considered as but one lot. Leck could not make two distinct parcels of ground by erecting two buildings, nor did the action of the court when separating the premises for sale purposes, to promote the interests of all parties, affect the lien claims. One lien statement was enough. *Knauft* v. *Miller*, 45 Minn. 61, (47 N. W. Rep. 313,) is not in point.

We see no error in the allowance of the Hoglund claim to the amount set forth in the lien affidavit. He was to do the stone work for $3,075 in cash, and three lots, subject to a mortgage for $2,500. If he needed an additional $500 with which to pay bills, he was to have that amount in cash, the incumbrance upon the lots to be increased to $3,000. The lots subject to the $2,500 mortgage were conveyed to Hoglund by Leck, and, on settlement, the latter demanded that a second mortgage be placed thereon by the former, running to a third party, for $500. Such a mortgage was executed and delivered by Hoglund to Leck, so that Hoglund really took the lots subject to a mortgage of $3,000. There was no proof that he needed an additional $500 to pay bills, but he received no more than the sum of $2,821 in cash on any account held against Leck.

As between Leck and Hoglund, we are warranted in assuming that the money was needed for the payment of bills, and that it was furnished in accordance with the terms of the contract. If, as between the latter and other parties interested in the premises, the transaction whereby Leck received $500, by means of the second mortgage, must be considered as a loan from Hoglund, the amount of such loan should be deducted from Leck's cash payments. These payments were not applied to any particular debt by the parties. Where a debtor makes a general payment, his indebtedness being in part secured and in part unsecured, the law, in the absence of specific appropriation by the parties, will apply the payment, first, to the liquidation of the unsecured indebtedness. *Lush* v. *Edgerton*, 13

Minn. 210, (Gil. 197.) If the dealing on this matter was a loan of $500 to Leck, it was unsecured, while the balance of his indebtedness to Hoglund stood secured by the statutory right of lien.

According to their lien statement, Clough Bros. commenced to furnish material December 10, 1889, the total value thereof being correctly set forth. In their answer it was alleged that the first materials were furnished on October 19th. Against plaintiffs' objection, these parties were permitted to prove the delivery of material as averred in their answer, and, by its finding of fact, their claim for a lien was sustained by the trial court as to all material furnished prior, as well as subsequent, to the date given in the lien statement. There was no error in this. *Miller* v. *Condit, ante,* p. 455, (55 N. W. Rep. 47.)

Respondent Plant was an architect, and the effect of the finding relative to his claim is that he advised Leck, his employés and contractors engaged in the erection of the building on the rear of the lot, in reference to the work and material used by them, and did furnish to him and them full plans therefor. This finding would bring the claim within the terms of the old law, as construed in *Knight* v. *Norris,* 13 Minn. 473, (Gil. 438.) But section 1 of the new provides that "whoever performs labor or furnishes *skill,* material, or machinery" shall be entitled to a lien. This language is broader than that found in the old law, and clearly includes an architect whose labor and skill have been required and rendered in preparing plans for, and advising the owner and others engaged in, the construction of a building.

We decline to pass upon the last assignment of error, addressed to the ruling whereby statutory costs were allowed in the court below to each of four respondents. We are informed by appellants' brief that the proceedings in the taxation of costs before the clerk, and on appeal to the district court, may be found in detail in the return on file with the clerk of this court. Rule ix. (25 N. W. Rep. iii.) of this court requires that so much of the return as will clearly and fully present the question arising on review must be printed in the paper book. There was no attempt made in this case to comply with that rule. It was wholly disregarded, and the alleged error is, as a consequence, not properly before us for review. Of course this rule may be modi-

fied upon application, and in proper cases, so as to render the printing of portions of the return unnecessary, but no modification was asked for in this instance.

Other assignments of error need no consideration.

Judgment affirmed.

GILFILLAN, C. J.    I dissent both as to the result and the reasoning by which it is reached.    It must, of course, be assumed that the legislature had a purpose in requiring by section 8 that the lien statement which must be filed by each lien claimant shall state the date when the first item was furnished, and in providing that the statement shall operate to continue such lien from the date of such first item until the expiration of one year from the date of the last.    No purpose can be suggested except to fix the date when each lien shall be deemed to have attached.    Under all the mechanic's lien laws of of this state prior to 1889, all such liens took rank, not only as between themselves, but in respect to other interests and liens, in the order of the dates of the first items, without regard to when the building was commenced; and such is the rule under the act of that year, except in so far as the express provisions of section 8 may be modified by other provisions of the act.    The opinion of the majority of the court is, in substance, that, in respect to other accruing interests and liens, all mechanics' liens attach, not from the dates of the first items, as prescribed in section 8, but from the date of beginning the work on the building; so that if a mortgage or judgment lien attaches after any work, however little, has been done, and though that work was paid for when done, so that there is no lien for it, such mortgage or judgment lien is postponed to all mechanics' liens attaching subsequently according to section 8.

The reasoning by which that end is reached is based on the clause in section 10 providing that, in distributing the proceeds of the sale to satisfy the mechanics' liens, it shall be done "*without priority among themselves.*"    That provision places such liens on an equal footing, without regard to the dates when they attached, and, as "*among themselves,*" makes those dates unimportant; but how an intent to place these liens on an equal footing among themselves manifests an

intent to place them on a footing superior to that of other interests or liens, or an intent to make them, in respect to such other interests or liens, attach at any other times than those expressly prescribed in section 8, I am unable to see. · It is contrary to well-known rules· of construction to hold that the express provisions of section 8 are modified by section 10, except so far as is necessary to give effect to the provisions of the latter section; and I cannot see why those provisions may not have full operation without affecting section 8, so far as it prescribes when mechanics' liens shall attach as to any interests except as *among themselves.*

That, by the statutes of some of the states, mechanics' liens attach from beginning the work on the building, may be a sufficient reason for our legislature to adopt the same rule, but is no reason for us to say it has adopted it. Some states have adopted it; more states have not. Our legislature has followed the latter. Had it intended to adopt the rule in the former states, the terms in which it might have done so are so obviously simple and direct, requiring a change in but a single line of section 8, that attributing to it such intent upon the provisions of this act almost amounts to a charge of gross incompetency or negligence in the choice of terms to express its intention.

Of the suggestion in the majority opinion that upon any other rule than that adopted by it, in the case of a mortgage or judgment lien intervening between the prior and subsequent mechanics' liens, injustice will in some way be done to the holders of the prior of such liens, it is enough to say that such holders have no right to any lien except such as the statute gives, be it more or less beneficial to them; and if their liens, as given, are rendered less valuable because they are required to share with the holders of liens which the owner's acts and defaults suffer to accrue, they cannot complain because they take their liens subject to such contingencies.

DICKINSON, J. I also dissent, and for the reasons expressed in the foregoing opinion of the chief justice.

(Opinion published 54 N. W. Rep. 746.)