JAMES A. BURNER AND OTHERS v. NORTHWESTERN
BIBLE AND MISSIONARY TRAINING SCHOOL.[1]

January 23, 1925.

No. 24,340.

**Contract of employment ended by mutual consent.**
    1. The evidence is conclusive that a contract of employment was terminated by mutual consent, and not because of the dissolution of the firm of architects employed.

**Architects entitled to reasonable value of their services.**
    2. The only inference to be drawn from the conduct of the parties to the contract, when by consent work thereunder was abandoned on account of the war conditions, is that the architects should be compensated according to the reasonable value of their services in preparing preliminary studies, and the court did not err in refusing to instruct the jury that plaintiffs' recovery must be limited to the amount defendant was enriched by the labor of the architects.

**Correct to refuse inaccurate request to instruct jury.**
    3. Where a requested instruction is inaccurate or inapplicable to the evidence, its refusal is not reversible error.

Action in the district court for Hennepin county to recover $8,000 for work and material. The case was tried before Baldwin, J., and a jury which returned a verdict for $4,236.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Kingman, Cross, Morley & Cant,* for appellant.
*Brill & Maslon,* for respondents.

HOLT, J.
Previous to 1914 the Northwestern Bible and Missionary Training School, an institution affiliated with the First Baptist Church of Minneapolis, planned to erect a large building on the northwest corner of Eleventh street and Harmon Place. James A. Burner

[1]Reported in 201 N. W. 939.

and William K. Macomber, a firm of architects, were hired to provide sketches for a booklet to be used to induce subscriptions for the enterprise. They did so and were paid $1,000 for their work. This was with the understanding that, if the project could be carried out and they became the architects for the building, this $1,000 should be applied upon their fees. In the fall of 1916 defendant entered a contract with them to furnish for the contemplated building architectural services "comprising preliminary studies, working drawings, specifications, large scale and detail drawings and will take the general direction and personal supervision of the work," for a commission of 3 per cent of the actual cost of the building. "It being understood that the building is to be built in two (2) or more sections or units, it is hereby agreed that, upon the completion and formal acceptance by the Building Committee of the preliminary studies for any one of such units, one-fifth (1/5) of the entire fee for such unit shall become due and payable." The defendant had a building committee. The architects went to work upon preliminary studies. Before these were completed and accepted, the World War necessitated a suspension of the undertaking for the time being. This was recognized as unavoidable by both the architects and defendant.

When the architects realized that matters had reached the pass that no formal acceptance of the preliminary studies by the building committee could be had, Mr. Burner of the firm requested that they be given as much money as could be had without acceptance. Thereafter on May 12, 1917, money was paid under this agreement: "Received of the Northwestern Bible and Missionary Training School, one thousand dollars * * * being an advance on architectural fees to become due on our contract, it being understood that the payment is as an accommodation and in no wise an acceptance of the preliminary plans and does not bind the Northwestern Bible and Missionary School to accept or adopt the building plans prepared by us." The week prior to receiving this money the partnership of the architects ceased. And in the fall of that year Mr. Burner entered into military service and remained therein until May, 1920.

Mr. Macomber assigned his interest in the claim for services to Burner when the partnership was dissolved. It also appears that in 1919 defendant determined upon a very modest building, and Mr. Burner was invited to plan and supervise its erection. However, he wished to do the work at the military post in the east where he was stationed. This defendant would not accede to, and employed one who could supervise the construction.

The complaint alleged that defendant was indebted to plaintiffs in the sum of $8,000, the reasonable value of the architect's services performed by Burner & Macomber, less $2,000 paid; that the services were performed under a written contract attached to the complaint until in May, 1917, when defendant notified them that it was inexpedient to proceed with the project for the time being and they acquiesced; and that in September, 1919, defendant notified them that it would engage another architect. The answer alleged that defendant had employed the firm, relying upon securing the joint services of the two members thereof; that the firm was dissolved on May 5, 1917, and that thereby the employment was terminated; that payment of $2,000 had been made in satisfaction of the claim; that the government forbade the erection of buildings of this character during the time we were at war with Germany and Austria, and therefore the carrying out of the undertaking became impossible; that Burner entered military service and thereby disabled himself to perform the contract with defendant; and that, after the war ended, when defendant desired to reengage Burner as architect in the erection of a dormitory, he declined the same.

The appeal presents three questions, as we view the assignments of error: (1) Was defendant entitled to a directed verdict? (2) Should recovery have been limited to the amount defendant was enriched by the work of the architects? (3) Did the court err in refusing to give a requested instruction to the effect that recovery should be limited to 3/5 of one per cent of the reasonable cost of the building then intended to be erected, even though such building might be so designed that its height could be increased in the future by additional stories.

A verdict could have been directed only on the theory that a dissolution of the partnership of the architects as a matter of law terminated the employment, thus putting plaintiffs in default. It is sufficient for the present to note that the dissolution came about the time the parties to the contract mutually concluded that war conditions rendered further prosecution of the undertaking impracticable, if not impossible. Therefore, the dissolution of the firm of architects did not breach the contract and was not the cause of the cessation of work thereunder.

At the time of the employment the parties realized the possibility of this country becoming involved in the World War. By May, 1917, matters had taken such a turn that the architects as well as defendant concluded all efforts to construct the intended building must cease, and never since did either party consider that conditions have so changed that work thereon could be resumed. For it appears that, instead of the extensive building contemplated, defendant has actually constructed upon its site a modest structure of an entirely different type. And Mr. Burner has never deemed it proper to suggest that there should be any resumption of work under the contract of employment. He understood that the funds for such an undertaking as contemplated in the fall of 1916 were to be solicited from the public; that it was impossible to so raise funds during the war; and that since the war the cost of building has so soared that about double the amount would now be required. What was the conduct of the parties in May, 1917, when the impracticability if not impossibilty of further progress appeared?

The architects thought their work had been completed so as to entitle them to a payment under the contract. They asked defendant to call a meeting of the building committee to accept and approve the preliminary studies. If they were justly entitled to have had the studies accepted, no doubt the contract, though then abandoned, would have governed the compensation up to that time. But the committee did not act. Defendant paid $1,000, with the understanding that such payment should not bind it to adopt or accept the preliminary studies. It is not fair to assume that, when the personal services of these professional men were thus ended, they

were not to be compensated for what they had done. Part payment indicates to the contrary. It is just to infer from the conduct of the parties that, upon abandonment of the building project, it was intended that a reasonable compensation should be paid for what work the architects had expended upon the preliminary plans thus far. The contract being out of the way by mutual consent, the services should be considered as rendered at the request of defendant, to be paid for upon a quantum meruit.

In Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167, speaking of a contract, the performance of which might be prevented by a contingency, the court said it was implied that, if the contingency happened, both parties were "to be released as to the future, but bound as to the past." That seems to be the theory of the decisions in Russell v. Bush, 196 Ala. 309, 71 South. 397; Moore v. Robinson, 92 Ill. 491; Butterfield v. Byron, 153 Mass. 517, 27 N. E. 667, 12 L. R. A. 571, 25 Am. St. 654; Woodford v. Kelley, 18 S. D. 615, 101 N. W. 1069. In the Russell case it is said: "Although recovery upon the special contract cannot be had without showing substantial performance, yet where a partial performance has resulted in benefits that were accepted by the other party, and the contract was abandoned by mutual consent or was rescinded or extended by some act or failure of the defendant, a recovery may be had therefor under a quantum meruit, for the value of the work performed or services rendered."

Defendant insists that plaintiffs could only recover to the extent it has benefited or been enriched by the preliminary studies, which was vertually nothing, and cites Mascall v. Reitmeier, 145 Minn. 214, 176 N. W. 486, and Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584. In the first case a provision in a lease to be performed by the tenant was rendered impossible of performance by the enactment of a statute subsequent to the making of the lease, and in the last-mentioned case the contract was void. In neither was the engagement terminated by consent.

In the following cases, also cited by defendant, it was held that where a contractor is prevented from completing changes or repairs to an existing structure because of its accidental destruction, with-

out the fault of owner or contractor, the latter may recover the reasonable value of only so much labor and material as was incorporated into the structure before its destruction; Krause v. Board, 162 Ind. 278, 70 N. E. 264, 65 L. R. A. 111, 102 Am. St. 203, 1 Ann. Cas. 460; Carroll v. Bowersock, 100 Kan. 270, 164 Pac. 143, L. R. A. 1916D, 1006; Young v. City of Chicopee, 186 Mass. 518, 72 N. E. 63; Dame v. Wood, 75 N. H. 38, 70 Atl. 1081. But strictly speaking the owner was not enriched or benefited by what was incorporated, for he lost not only that but the original structure. Under the theory of those decisions and our mechanics' lien statute, it may also be said here that these preliminary studies may be regarded as an improvement upon the land for which the owner is liable to the amount of their reasonable value, even though the building designed was never erected. Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204.

But, be that as it may, it seems to us that the abandonment by mutual consent of an undertaking in the conduct of which professional men were hired to work and did work, is quite different from a case where, for a lump sum, a contractor has undertaken to repair or add to an existing structure, and completion of the job is rendered impossible by accident or by some outside force which, however, is not recognized by the one party as excusing the other from proceeding with his part of the contract. And assuming, as defendant claims, that the war rendered performance impossible and peace was an implied condition for the continuance of the contract, this statement in Butterfield v. Byron, supra [153 Mass. 517], is applicable:

"The principle seems to be, that when, under an implied condition of the contract, the parties are to be excused from performance if a certain event happens, and by reason of the happening of the event it becomes impossible to do that which was contemplated by the contract, there is an implied assumpsit for what has properly been done by either of them, the law dealing with it as done at the request of the other, and creating a liability to pay for it its value, to be determined by the price stipulated in the contract, or in some other way if the contract price cannot be made applicable."

We think the trial court did not err in refusing the requests of defendant which were to the effect that the jury were only to consider and determine how much defendant had been enriched by the architects' work at the time the project was abandoned, but that it rightly submitted as the sole question the reasonable value of their services upon the preliminary studies.

In that view it was probably wrong to say that defendant should have credit for $2,000, for the credit on the $1,000 paid for the booklet sketches could only be had under the abandoned contract. But this error was in defendant's favor.

The jury were also instructed that, in fixing value upon the architects' services, the cost of constructing a 12-story building was an item to take into account. This was not accurate for the building committee had the right to determine whether the building should be 4 or 12 stories and whether it should have 50 or 60 feet wings. In fact, the testimony is almost conclusive that no more than 4 stories were contemplated, though the foundation was to be sufficient to carry 12 in case, in the distant future, that might be needed. But no error has been assigned upon that part of the charge, unless it is included in this request which was refused and exception preserved, viz. "If you find for the plaintiffs, your verdict should be limited to the amount by which 3/5 of one per cent (1%) of the reasonable cost of the building then intended to be erected exceeds two thousand dollars ($2,000) even though such building might be designed so that its height could be increased in the future by adding additional stories or floors."

We think no error can be predicated upon a refusal to give this request, for it is not applicable to the facts. As already stated, the contract being ended or abandoned, there was no provision under which defendant could obtain credit for the $1,000 paid for work on the booklet in 1914 upon the services rendered after October, 1916, on the preliminary studies. Nor are we advised how 3/5 of one per cent of the reasonable cost of the building would then have any application. And, of course, no fixed percentage was applicable to a recovery of either reasonable value or for enrichment or benefits received by defendant.

We fail to find any substantial error upon which to reverse. The judgment is affirmed.