## DUNHAM ASSOCIATES, INC. v. GROUP INVESTMENTS, INC., AND OTHERS.

223 N. W. 2d 376.

September 6, 1974—No. 44628.

*Waters, Ince & Tischleder* and *John J. Waters,* for appellant.
*Cox & King* and *Leo G. Stern,* for respondents.

Heard before Peterson, Kelly, and Knutson, JJ., and considered and decided by the court.

KNUTSON, JUSTICE.*

This is an appeal from an order of the district court denying plaintiff's motion for a new trial or in the alternative for amended findings of fact and conclusions of law. Defendant Group Investments, Inc., filed a notice of review as to the judgment in favor of the other defendants.

The case involves an action to foreclose a mechanics lien. Plaintiff, Dunham Associates, Inc., is a South Dakota corporation which performs structural engineering services. Its home office is in Rapid City, South Dakota. It has branch offices in Sioux Falls, South Dakota; Bismarck, North Dakota; and Edina, Minnesota.

---

*Retired Chief Justice, acting pursuant to Minn. St. 2.724.

On September 23, 1970, Dunham was retained by Minnesota River Valley, Inc., now known as Group Investments, Inc., to prepare drawings, reports, and supervise the construction in two stages of an apartment building in Burnsville, Minnesota. A written contract was entered into between the two for this work. In addition to plans for the design and construction, plaintiff undertook to prepare mechanical and electrical plans for the building which were not originally contemplated by the parties but which Group agreed to purchase in October 1971.

Structural designs were prepared in Edina, Minnesota. The electrical and mechanical designs were prepared in Rapid City and Sioux Falls, South Dakota. All time records for plaintiff's work were maintained in Rapid City and all billings for Dunham's work originated in Rapid City.

The compensation provided for in the contract was .75 percent of the general construction cost of the project for the first stage, which was to be the first of two proposed buildings, and .375 percent of the general construction cost for the second stage. Ninety percent was to be due during the bidding stage, with the 10 percent balance during construction.

Apparently during the contracting phase between Group and Dunham, Group represented that it owned the property. Before that time, the defendants, McCallum and Holloway, allegedly represented themselves as being connected with Group in some way. No one disputes that the fee owners of the property are defendants Leo W. Lannon and his wife, Josephine Lannon. Apparently the contract between Dunham and Group was entered into with the knowledge of McCallum, but there is no evidence or testimony that the fee owners had any knowledge of this contract or gave any consent to the projected improvements under the contract.

Pursuant to this contract, Dunham prepared the structural drawings and specifications. Periodic statements were presented to Group based upon estimated construction cost of $2,728,000. It is conceded in the record that this was only an estimate and that the actual cost could not be determined until the structure

was completed. The resulting contract price, based upon this estimate, was $18,414 plus expenses of $106.92, or a total of $18,520.92.

Plaintiff sued both on the theory of the contract price and for the reasonable value of its services. The reasonable value of labor performed and material furnished in the preparation of the structural plans and specifications is $13,295.87. The fee for mechanical and electrical plans and specifications for the project, which was accepted by Group on October 15, 1971, appears to amount to $13,300 plus costs of $57.24. The reasonable value of the labor performed for these plans was claimed to be $13,-115.68, based upon a rate of 2.5 times raw salary.

The total amount paid to Dunham for the services performed is $13,896, and the total due for all services under the contract is $31,878.16 and, based upon the reasonable value, would be $26,468.79. As a consequence, plaintiff claims that the balance due under the contract is $17,982.16, and based upon the reasonable value, is $12,572.79. The latter amount and interest was awarded by the trial court as a personal judgment against Group, but it held that Dunham was not entitled to a lien against the premises. It is conceded that the services furnished by Dunham were commenced on November 1, 1970, and completed on December 20, 1971, and that the action to foreclose the lien filed by Dunham was initiated within 1 year from the date of the completion of the work.

The building was never constructed nor were there any visual improvements on the land. Plaintiff also concedes that the plans in their present form are not complete and could not be used.

The case involves the proper interpretation of Minn. St. 1971, § 514.01, which provided in pertinent part:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, *shall have*

*a lien upon the improvement, and upon the land on which it is situated or to which it may be removed,* for the price or value of such contribution; that is to say, for the erection, alteration, repair, or removal of any building, fixture, bridge, wharf, fence, or other structure thereon * * *." (Italics supplied.) [1]

Essentially, the question becomes: Can an engineer who prepares engineering structural plans and mechanical and electrical plans for a proposed building have a lien against the land on which the building was to be erected if it is never built or the plans are not used for the purpose of constructing the building?

■ We see no rational distinction between the services of an architect who prepares plans and specifications for a building and the services of an engineer who prepares structural, mechanical, and electrical plans for a building. If one is entitled to a lien, it would seem that the other is also.

At an early date we held that an architect who prepares plans and specifications for and superintends the construction of a building under a contract with the owner is entitled to a lien under our then existing statute. Knight v. Norris, 13 Minn. 438 (473) (1868). The statute at that time read in pertinent part (G. S. 1866, c. 90, § 1):

"Whoever performs labor, or furnishes materials or machinery for erecting, constructing, altering, or repairing any house * * * or other building * * * by virtue of a contract or agreement with the owner or agent thereof, shall have a lien to secure the payment of the same * * *."

We said (13 Minn. 439 [475]):

"The labor and skill of an architect and superintendent of the work upon a building are a part of the expense of erecting a building, and not unfrequently an indispensable and highly valuable part."

---

[1] The mechanics lien statute was amended by L. 1974, c. 381, so as to include among those entitled to a lien: "Whoever performs engineering or land surveying services with respect to real estate * * *."

Again, in Gardner v. Leck, 52 Minn. 522, 531, 54 N. W. 746, 750 (1893), we said:

"Respondent Plant was an architect, and the effect of the finding relative to his claim is that he advised Leck, his employes and contractors engaged in the erection of the building on the rear of the lot, in reference to the work and material used by them, and did furnish to him and them full plans therefor. This finding would bring the claim within the terms of the old law, as construed in Knight v. Norris, 13 Minn. 473, (Gil. 438). But section 1 of the new provides that 'whoever performs labor or furnishes *skill*, material, or machinery' shall be entitled to a lien. This language is broader than that found in the old law, and clearly includes an architect whose labor and skill have been required and rendered in preparing plans for, and advising the owner and others engaged in, the construction of a building."

In both of the above cases the architects' plans were actually used in improving the land.

In the case of Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908 (1915), we were first confronted with a case that involved the right of an architect to a lien on land where the plans were not used but the building project was abandoned by the owner. In both the previous cases there were dissents. The court had considerable difficulty in Lamoreaux. We find the following language (128 Minn. 263, 150 N. W. 909):

"The first question is one of doubt and difficulty, and the conclusion reached is not the unanimous opinion of the court. It appears conclusively, we think, that there was no improvement on the land. The removal of the old barn by defendants and the making of the survey cannot be considered as an improvement. This was done entirely independently of the contract with plaintiffs, and clearly plaintiffs contributed nothing to this work. Architects are entitled to liens for services in preparing plans and superintending construction where there is an actual improvement to which their work contributes. [Citing Knight v. Norris,

*supra,* Gardner v. Leck, *supra,* and other cases of little value here.] \* \* \* We think plaintiffs would have been entitled to a lien if their plans had been used in the construction of a building on the premises."

After discussing the statute then in effect which provided that "a person contributing labor, skill, materials or machinery for the construction, or alteration \* \* \* is given a lien," the court said (128 Minn. 265, 150 N. W. 910):

"It must be conceded that the lien statute, if construed literally, does not expressly give a lien when no improvement is begun on the ground. Can we, by liberality of construction, nevertheless say that a lien may attach under such circumstances? To answer this question correctly, a review of our past decisions is necessary. We have no case where a lien has been granted when there was no tangible improvement on the ground."

After discussing a number of cases, we said (128 Minn. 267, 150 N. W. 911):

"\* \* \* We place our decision on the language of the lien statute of this state, as it has been construed in the cases referred to, and hold that there may be a lien without an actual 'improvement,' and that we can fairly say that plaintiffs 'constructively' contributed to an improvement of defendants' land in this case."

Based upon this theory of a constructive contribution to an improvement, we held that plaintiff was entitled to a lien. The Lamoreaux case has been cited in a number of subsequent cases without being overruled.

In the case of Burner v. Northwestern Bible & M. T. School, 161 Minn. 480, 485, 201 N. W. 939, 941 (1925), which involved the right to recover the reasonable value of services of an architect where the building was not completed, we reviewed cases from other jurisdictions and then said by way of dicta:

"\* \* \* Under the theory of those decisions and our mechanics' lien statute, it may also be said here that these preliminary

studies may be regarded as an improvement upon the land for which the owner is liable to the amount of their reasonable value, even though the building designed was never erected. Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204."

In the case of Jandrich v. Svabek, 170 Minn. 24, 26, 211 N. W. 957, 958 (1927), which involved a foreclosure of a mechanics lien by an architect, we said:

"It is claimed that since the plans and specifications were not used there was no 'improvement' as used in G. S. 1923, §§ 8490, 8492, 8494 and 8497. There seems to be some authority tending to support this theory. Foster & Libbie v. Tierney, 91 Iowa, 253, 59 N. W. 56, 51 Am. St. 343. However, we have held to the contrary in Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204, where the question was thoroughly considered and we think rightly decided."

See, also, National Lumber Co. v. Farmer & Son, Inc. 251 Minn. 100, 87 N. W. 2d 32 (1957).

Respondents contend that Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908 (1915), has been overruled by Anderson v. Breezy Point Estates, 283 Minn. 490, 168 N. W. 2d 693 (1969). That case involved an attempt to impose a mechanics lien upon certain property owned by defendant for services rendered in surveying certain land for the purpose of constructing a ditch. We held in that case that no lien could attach because the services rendered by plaintiff were not such as to bring them within the purposes for which a lien is created by our statute. We listed the purposes for which a lien may attach under our statute and then said:

"* * * The claimant must have contributed one or more of these things *for the purposes stated in the statute.* Therefore, the burden upon one seeking to establish a right to a lien is threefold: He must show that the real estate has been improved, that

he supplied labor or materials, and that the labor or materials were supplied for one of the purposes stated in the statute.

"It is obvious from a reading of the statute that surveying and platting of land is not one of the specific purposes listed in the statute. Therefore, assuming without deciding that the work of plaintiff here constituted an improvement on the real estate involved and that he expended labor or materials, it is still necessary to fit plaintiff's work within one of the other stated purposes if he is to qualify for a lien." 283 Minn. 494, 168 N. W. 2d 696.

It is obvious that the decision in Anderson is based upon the premise that the work done did not come within one of the purposes enumerated in our lien statute. That is not true here. If the services of plaintiff are lienable, these services do come within the enumeration of purposes for which a lien may attach under our statute, that is, they were intended to prepare plans for the erection of a building. As a result, Anderson v. Breezy Point Estates, *supra*, which does not even mention Lamoreaux v. Andersch, *supra*, can hardly be held to have overruled it.

Were this a case of first impression, we might well hold that there is no lien against the land unless something is done upon the land. That is the rule that is applied in cases involving priorities between lienholders and mortgagees, but in that area the statute read (Minn. St. 1971, § 514.05) :

"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished *upon the premises* for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground * * *." (Italics supplied.)

In the case of Wentworth v. Tubbs, 53 Minn. 388, 55 N. W. 543

(1893), in an opinion written by Mr. Justice Mitchell, the theory that a bona fide mortgagee should have precedence over a lien claimant where there was no visible improvement on the ground was first stated and may well have led to the adoption of the revision of the statute which now so provides.

Some of our other cases in which Lamoreaux has been cited have been decided either on the ground that they involved priority between a mortgagee and a claimed lienholder or on some other ground. Thus, in Reuben E. Johnson Co. v. Phelps, 279 Minn. 107, 114, 156 N. W. 2d 247, 251 (1968), we quoted with approval from Erickson v. Ireland, 134 Minn. 156, 161, 158 N. W. 918, 920 (1916), the following:

"We hold that when a building is erected all liens attach at the time the first item of material or labor is furnished on the ground. The result is that the mortgage is prior to the liens."

We then said:

"It follows that Erickson v. Ireland is authority for the proposition that, while an architect may have a lien for his services *against the owner*, liens filed subsequent to a mortgage such as we have here do not attach from the time the architect commences his work, because the architect's work is not an 'actual and visible beginning of the improvement on the ground.'" (Italics supplied.)

In M. E. Kraft Exca. & Grad. Co. v. Barac Const. Co. 279 Minn. 278, 156 N. W. 2d 748 (1968), the appellants contended that a mortgagee had actual knowledge of the architect's preliminary work and the survey and should therefore be chargeable with notice even though there was no actual or visible improvement on the ground. With respect to this claim, we said (279 Minn. 285, 156 N. W. 2d 752):

"* * * Such contention was rejected in Landers-Morrison-Christenson Co. v. Ambassador Holding Co. 171 Minn. 445, 448, 214 N. W. 503, 504, 53 A. L. R. 573, 576, wherein it was held:

" 'All liens attach from the time the first item of material or

labor is furnished on the premises for the beginning of the improvement. As against the owner a lien may attach although no material or labor has been furnished on the ground. Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204.

" ' "As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, *no lien shall attach prior to the actual and visible beginning of the improvement on the ground.*" ' (Italics supplied.)

\* \* \* \* \*

"Under the holding in Reuben E. Johnson Co. v. Phelps, *supra*, we are bound to hold upon the record herein that neither the survey nor the services of the architect in preparing plans for improvement of the premises constituted an actual and visible improvement on the ground so as to permit a lien filed subsequent to Knutson Company's mortgage to attach as of the date of the survey or as of the date of the commencement of the services of the architect, as against a bona fide mortgagee without notice."

We have also held that as against an owner, a lien may attach for material "not actually used on the premises," citing Lamoreaux v. Andersch, *supra,* and other cases. Lampert Lumber Co. v. Thanning, 158 Minn. 312, 197 N. W. 269 (1924).

"Owner" as used in our mechanics lien statute does not require proof of absolute ownership but may include any interest which the court may order sold. Benjamin v. Wilson, 34 Minn. 517, 26 N. W. 725 (1886) ; Geissinger v. Robins, 274 Minn. 215, 143 N. W. 2d 50 (1966). Even an equitable interest may be reached if it is such that it may be sold. Atkins v. Little, 17 Minn. 320 (342) (1871).

It is clear that mechanics liens are purely creatures of statute and that the lien exists only within the terms of the statute. M. E. Kraft Exca. & Grad. Co. v. Barac Const. Co. 279 Minn. 278, 283, 156 N. W. 2d 748, 751 (1968) ; Anderson v. Breezy Point Estates, 283 Minn. 490, 168 N. W. 2d 693 (1969).

Distilling our statutes and cases, which are not in the most desirable shape, we glean that the services of an architect or, as here, an engineer, if they are used in the construction of an improvement on the land, are lienable. If they are not used, under Lamoreaux it would seem they are lienable against the owner but from other cases not against a bona fide mortgagee or encumbrancer who has no knowledge of the architect's services, but before a lien may attach to an owner's interest it must be shown what that interest is.

■ Minn. St. 1971, § 514.03, which provided the extent to which a lien attaches, read:[2]

"If the contribution be made under a contract with the owner and for an agreed price, the lien as against him shall be for the sum so agreed upon; otherwise, and in all cases as against others than the owner, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished. It shall extend to all the interest and title of the owner in and to the premises improved, not exceeding 40 acres in area if situated outside the limits of an incorporated city or village, and not exceeding one acre if within such limits."

The trial court found not only that plaintiff had not established the right to a lien but that he had failed to prove the part of the 20-acre tract that the lien would attach to if it were a lienable item at all.[3]

The difficulty in this case therefore is twofold. There is no evidence in the case at all as to what interest, if any, the defendants had in this property. It is clear that the fee owners were not

---

[2] The provision limiting the extent of the lien to one acre within the limits of an incorporated city or village was eliminated by the legislature by L. 1973, c. 247, § 3, but in this case the law prior to the amendment governs.

[3] See, Gale v. Hopkins, 165 Minn. 177, 206 N. W. 164 (1925), and Evans v. Sanford, 65 Minn. 271, 68 N. W. 21 (1896), as to how the trial court should determine what acre is included in the lien if an "improvement" is actually established.

the contracting parties with plaintiff. Group is the only one who appears to have dealt directly with plaintiff. Plaintiff claims that the interest of Group is established by the answer to the complaint. The complaint alleges:

"That the defendant, GROUP INVESTMENTS, INC., is a Minnesota Corporation, formerly known as MINNESOTA RIVER VALLEY, INC., and, upon information and belief, is believed to have a contract interest in a parcel of land situated in the County of Dakota, State of Minnesota, which property is hereinafter described as the subject property and which property is fully described in Exhibit 'I', which Exhibit is attached hereto and incorporated herein as if set forth in full.

"That the defendants, W. B. MCCALLUM and MARY ALICE MC-CALLUM, and F. W. HOLLOWAY, JR., and GRACE E. HOLLOWAY, on information and belief, are believed to have a contract interest in the subject property."

The complaint then alleges, and there seems to be no dispute in the record, that Leo W. Lannon and Josephine Lannon are the record fee owners of the subject property. The complaint qualifies this by adding "subject to whatever unrecorded contract rights exist running to" the other defendants. The answer admitted these allegations.

There was not one word of evidence in the record as to what these alleged contract rights are. Plaintiff introduced the findings of fact, conclusions of law, and order for judgment in another action in which Group was plaintiff but the other parties were not the same or the issues the same. In that action, Group was found to be the owner of certain described property. Other than that, there is nothing to show whether Group, or any other of the defendants if they had a contract interest, held a lease, an option, a vendee's interest, or what not. In Benjamin v. Wilson, 34 Minn. 517, 520, 26 N. W. 725, 726 (1886), we said:

"* * * We conclude that any interest which the court can order sold will support the lien."

But on the record before us what interest could the court order sold? It would seem that if this rule is to apply, it is incumbent upon plaintiff to show what interest the defendants own in the land in order that it can be ordered sold to satisfy the lien, if there is one.

■ Where there is a visible improvement, such as a building erected upon the land, the court can quite easily carve out a one-acre tract that would go with the building, but where, as here, there are no visible improvements on the land and not even any evidence as to where the building was to be located, it would present an impossible task for the trial court to carve out of the larger tract one acre against which the lien should attach.

Secondly, there is absolutely no evidence to show on which part of the 20-acre tract the contemplated building would go if constructed. Under our lien statute, the lien can extend to only one acre in an incorporated city, such as we have here. There is no showing that any soundings were taken, any survey made, or any other plans for the location of the building, if there was to be one, were completed. Under these circumstances, we think the court was correct in holding, first, that plaintiff has failed to establish a right to a lien, and, secondly, that if there was a right to a lien, plaintiff has failed to establish on what part of the 20-acre tract the lien could attach.

Affirmed.