**KORSUNSKY KRANK ERICKSON AR-CHITECTS, INC., Petitioner, Appellant**

v.

**Harold E. WALSH, et al., Respondents.**

No. C5–84–1217.

Supreme Court of Minnesota.

June 19, 1985.

John R. Dorgan, Minneapolis, for appellant.

Carl A. Swenson, St. Paul, for respondents.

WAHL, Justice.

This is an action to foreclose a mechanics' lien brought by appellant Korsunsky Krank Erickson (hereinafter KKE) to recover for architectural services rendered in developing property owned in fee by the respondents (hereinafter the Walshes). The trial court concluded that KKE was entitled to enforce the lien against the Walshes' interest in the property. The Court of Appeals reversed, 357 N.W.2d 144 (Minn.App.1984). Having granted KKE's petition for further review, we reverse the Court of Appeals and reinstate the judgment of the trial court.

At all times material to this action, the Walshes were the fee owners of property located in Shoreview, Ramsey County. From September, 1978, through June, 1980, the R.C.E. Corporation entered into various option contracts with the Walshes to purchase the property from the Walshes for $582,000. R.C.E. in turn entered into a contract with KKE on January 12, 1979. Under this contract, KKE was to provide architectural services towards developing and improving the property as a shopping center. The initial contract was later superceded by and incorporated into another agreement that KKE would provide for all architectural services necessary to develop and construct the shopping center.

Pursuant to these agreements and at R.C.E.'s request, KKE provided substantial architectural services related to development of the property, including work for approval of a zoning change, a preliminary plat, and site plans. KKE's work ceased on June 20, 1980, upon notice from R.C.E. Corporation that it was abandoning the project. R.C.E. later commenced bankruptcy proceedings, and no longer has any interest in the property.[1] No physical or visible work on the property had been accomplished by KKE prior to the cessation of the project.

The trial court found that the Walshes had specific knowledge of KKE's services related to the property, and in fact had consented to, acquiesced and participated in the provision of those services but did not give statutory notice to protect their ownership interests in the property pursuant to Minn.Stat. § 514.06 (1984). KKE did give proper statutory notice of its lien claim under Minn.Stat. § 514.08 (1984).

The court found that the architectural services and labor provided by KKE to improve the property had a reasonable value of $27,643.72. Of this amount, R.C.E. had paid $13,348.61. The court found that KKE was entitled to a lien against the property in the amount of $14,295.11, plus interest, costs and disbursements of $235.05, and attorney fees in the amount of $2,500. The Walshes had no personal liability for those amounts, and KKE was not entitled to any deficiency judgment for amounts not satisfied by the foreclosure of the lien.

The court ordered the lien foreclosed, and the property sold to satisfy the lien. The Walshes appealed. The Court of Appeals reversed the decision of the trial court, concluding that KKE was not entitled to a lien where the landowner was not a party to a contract between the developer and the architect, the developer was not the owner's agent, and no visible work was

---

1. The trial court dismissed R.C.E. as a party to this action.

done on the property. The correctness of this decision is before us on review.

■ Two general requirements must be met for a mechanics' lien to be enforceable. The services provided must be lienable improvements as described in Minn.Stat. § 514.01 (1984) and the lien must be enforceable against the interest in the property held by the defendant.

■ Section 514.01 provides in relevant part:

Whoever * * * contributes to the improvement of real estate by performing labor, or furnishing skill * * * for any of the purposes hereinafter stated * * * shall have a lien upon the improvement, and upon the land on which it is situated * * *, that is to say, for the erection, alteration, repair or removal of any building * * *.

The parties do not question, nor do we, that the architectural work performed by KKE was a lienable service as defined in section 514.01. *See Lamoreaux v. Andersch,* 128 Minn. 261, 150 N.W. 908 (1915); *Jandrich v. Svabek,* 170 Minn. 24, 211 N.W. 957 (1927); *Dunham Associates, Inc. v. Group Investments, Inc.,* 301 Minn. 108, 223 N.W.2d 376 (1974). That a person has performed lienable services is not in itself sufficient to give rise to an enforceable lien, however. The lien must also be enforceable against the interest in the property held by the defendant. Generally speaking, the underlying basis permitting the imposition of a lien on a defendant's particular interest is that person's consent to the improvement to the property. *Karl Krahl Excavating Co. v. Goldman,* 296 Minn. 324, 208 N.W.2d 719 (1973); *Berglund & Peterson v. Abram,* 148 Minn. 412, 182 N.W. 624 (1921). If the person against whose interest the lien is charged contracted for the improvement with the lien claimant, his or her consent is inferred from the contract to perform the improvement. *Laird v. Moonan,* 32 Minn. 358, 20 N.W. 354 (1884). If the person is not a contracting party, however, his or her consent may arise by operation of law under Minn.Stat. § 514.06 (1984). Since it is not claimed that

KKE performed its services under contract with the Walshes but under contract with the developer, the dispositive issue on this appeal is whether the lien attached to the Walshes' interest in the property pursuant to section 514.06.

■ Section 514.06 states in relevant part:

When improvements are made by one person upon the land of another, all persons interested therein otherwise than as bona fide prior encumbrancers or lienors shall be deemed to have authorized such improvements, in so far as to subject their interests to liens therefor. Any person who has not authorized the same may protect his interest from such liens by serving upon the persons doing work or otherwise contributing to such improvement within five days after knowledge thereof, written notice that the improvement is not being made at his instance * * *.

The threshold requirement for imposing a lien under this section is that an improvement be made by one person upon the land of another. Once that requirement is met, it must further be proved that the owner had knowledge that the improvement was being made, and that the owner thereafter failed to serve notice disclaiming authorization. *Nasseff v. Schoenecker,* 312 Minn. 485, 492, 253 N.W.2d 374, 378 (1977). It is undisputed that the Walshes had knowledge of the improvement. The trial court found as a fact that the Walshes not only knew, but "consented, participated and acquiesced in" KKE's work. It is also undisputed that the Walshes failed to give the statutory disclaimer notice. The only disputed issue is whether KKE's services constituted "improvements * * * made by one person upon the land of another."

The Court of Appeals, in holding that the lien could not be enforced against the Walshes' interest, concluded that an improvement must be visible for the improvements to be made upon the land of another under section 514.06. On this appeal, KKE argues that, since an "improvement" need not be visible to give rise to a lienable

service under section 514.01, neither should an improvement necessarily be visible for a lien to attach under section 514.06.

This court has repeatedly held that architectural services of the sort performed by KKE are "contributions to the improvement of real estate" within the meaning of section 514.01, even if those services do not result in visible, physical alterations in the property or increase its capital value. *Lamoreaux*, 128 Minn. at 267, 150 N.W. at 911; *Jandrich*, 170 Minn. at 26, 211 N.W. at 958; *Dunham Associates*, 301 Minn. at 119, 223 N.W.2d at 383. Although we have never had occasion to apply the "constructive contribution to an improvement" theory in a case decided under section 514.06, we discern no reason why the doctrine, having been adopted, should not apply equally under both sections. We note that we have consistently read section 514.06 *in pari materia* with section 514.01. A "contribution to an improvement" under section 514.01 has uniformly been considered equivalent to an "improvement upon the land" under section 514.06. As early as 1896, Justice William Mitchell explained that the predecessor version of section 514.06 was generally intended to give a lien on an owner's interest for every kind of labor or material for which a lien is given under the predecessor of section 514.01. *Colvin v. Weimer*, 64 Minn. 37, 65 N.W. 1079 (1896). Again in *Wallinder v. Weiss*, 119 Minn. 412, 138 N.W. 417 (1912), the court stated that the "foundation of the right" to a lien found in section 514.01 must be borne in mind in construing section 514.06, reaffirming that the two provisions are coordinate in scope and meaning. *See also Nasseff*, 312 Minn. at 492, 253 N.W.2d at 378 (two provisions impliedly treated as reaching the same improvements).

More importantly, no distinction between the types of services sufficient to permit a lien to attach is implied by the language of sections 514.01 and 514.06. The Walshes note that the language in section 514.06 differs from that contained in section 514.01, in that section 514.06 provides that an improvement must be made "upon the land of another" for a lien to attach while section 514.01 only requires that an "improvement to real estate" be made. They contend that this difference in language suggests that, since only visible improvements are made literally "upon the land," a lien may attach under section 514.06 only if the improvements are visible.

█ We are not persuaded by this argument. In light of the history of this court's interpretation of the two provisions, we construe the phrase "upon the land" to refer not to the visibility of the improvement, but to improvements which, if completed, would run with the land, as opposed to being removable fixtures. Language contained in section 514.01 supports this interpretation. While section 514.01 does not explicitly require that an improvement be made "upon the land," that provision does require that the improvements be made for one of the purposes enumerated, including for example, erecting a building, planting trees, or "grubbing." All of those purposes describe improvements which run with the land. *See Colvin*, 64 Minn. at 39, 65 N.W. at 1080.

█ The Walshes also argue that since the statute requires knowledge of the improvement to trigger section 514.06, not knowledge of "intended improvements," the work must be visible for authorization to be deemed given. A "constructive" improvement under our decisions, however, is an improvement, not an "intended" improvement. Thus, even if an argument could successfully be made that "intended" improvements are not within the statute, the argument has no application in this case. Nor does the rationale underlying the knowledge requirement so limit its application. In *Anderson v. Harrison*, 281 Minn. 95, 160 N.W.2d 560 (1968), the court explained that the legislature, in erecting the section 514.06 presumption, "clearly * * * intended to authorize a lien on [an owner's] interest only if he had actual knowledge and remained mute." *Id.* at 98, 160 N.W.2d at 562. The court was concerned that the owner had sufficient infor-

mation to know that he or she needed to protect an interest in the property by filing a disclaimer notice. While the invisibility of the improvements affects whether and when an owner would reasonably have had knowledge thereof, visibility is not related to the purpose of the requirement itself. An improvement need not be visible to be lienable under section 514.06.

 Lastly, we consider whether a contract must exist for a lien to attach where only constructive contributions to an improvement have been performed. In *Lamoreaux*, where we first held that a constructive contribution to an improvement would support a lien, we relied on principles of basic equity, noting the unfairness of permitting an owner to defeat a lien claimant's reasonable reliance on the lien statute by simply halting work before the claimant had accomplished visible changes in the land. *Lamoreaux*, 128 Minn. at 266–68, 150 N.W. at 911. The same considerations compel our conclusion here. The existence of a contractual relationship was expressly discounted as a basis for our decision when we stated that "[w]e do not mean that the breach of contract created the lien. Of course, it could not * * *." *Id.* We have similarly placed no reliance on the contractual relationship between the owner and lien claimant in later cases applying the constructive contribution rule. *See Jandrich, supra; Dunham Associates, supra.* It is of no significance that the consent of the owner in this case arose through the owner's undisclosed authorization of the improvement rather than through a contract.

We recognize the concern of the Court of Appeals with protecting a noncontracting landowner from a lien claim if the owner believed he or she was immune from such a claim by the existence of a contract between the claimant and a contracting owner. The appeals court observed that "[t]he Walshes knew of the plans between the architect and the developer. Yet, since they knew it was a contract, there was no reason for them to assume they needed to give notice [disclaiming authorization]." A contrary result may seem harsh, yet the historic purpose of the lien statute is to ensure a secure source of recovery against land for improvements made when personal judgments based on contract become unrecoverable. *Cf. Northland Pine Co. v. Melin Bros.*, 136 Minn. 236, 161 N.W. 407 (1917). The protection of the owners of this nonagricultural and nonresidential real estate lies in serving the statutory disclaimer notice.[2] We hold that the plaintiff architects in this case are entitled to a lien against the landowners' interest in subject property under Minn.Stat. § 514.06 where their services constituted a constructive contribution to an improvement of that property and the landowners consented to that improvement without statutory disclaimer of authorization. We reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.[3]

Reversed.

**2.** The Court of Appeals may have been mindful of the need to protect owners inexperienced in the operation of the lien statute from unwittingly subjecting themselves to lien claims from professionals in the building trades who have superior knowledge of their remedies. Minn. Stat. § 514.011 (1984), however, provides such protection for owner's who have services performed for the improvement of certain residential and agricultural real estate. This provision requires potential lien claimants to give notice to such owners that their property may be subject to liens. The trial court determined that KKE was not required to give the section 514.011 notice to the Walshes or R.C.E. because

the improvement to the subject property to which KKE contributed was nonresidential in nature and was to provide more than 5,000 total useable square feet of floor space.

**3.** The Walshes moved this court on May 30, 1985, for an order extending the termination of the statutory redemption time from the execution sale from July 27, 1985, to a date ninety days after the termination of petitioner's appeal rights and either party's rehearing rights in this court. Because we have expedited the filing of this opinion, we deny the Walshes' motion.