FRANK S. COLVIN and Others v. JOHN P. WEIMER and Others.[1]

January 29, 1896.

Nos. 9687—(306).

**Laborer's Lien—Excavation of Land.**

> G. S. 1894, § 6230, provides that whoever performs labor, etc., "for grading, filling in, or excavating any land," etc., shall have a lien upon the land for the price of his labor. *Held*, that a hole drilled in the ground solely for the purpose of ascertaining whether there is ore underneath, and, if so, whether it exists in paying quantities, is not an excavation of the land for which the statute gives a lien; that the statute only refers to excavations made for the purpose and in the progress of making improvements upon the land,

[1] Reported in 65 N. W. 1079.

Appeal by plaintiffs from a judgment of the district court for St. Louis county, adjudging that they were not entitled to a lien, entered in pursuance of the findings and order of Moer, J. Affirmed.

*Frank Crassweller*, for appellants.

*Cash, Williams & Chester*, for Virginia Iron Company, respondent.

MITCHELL, J. Stated briefly and according to their legal effect, the material facts are as follows: The Virginia Iron Company, being the owner of a tract of land upon which it was believed there was a body of iron ore under the surface, executed what is known as a "mining lease," permitting the lessees "to explore for," mine, and remove iron ore from the land, upon payment of a royalty upon each gross ton removed. The words "explore for," as used in mining leases, have a well-defined meaning, to wit, "The examination and investigation of lands by means of test pitting, drilling, and boring, for the purpose of discovering the presence of iron ore thereunder, and the extent of the ore body therein." Under and in pursuance of the terms of this lease, the lessees employed plaintiffs' assignor to perform certain labor upon the land "in exploring the same for iron ore." This labor consisted in drilling or boring a hole in the ground 6 inches in diameter and 160 feet deep. For this labor the plaintiffs claim a lien on the interest of the Virginia Iron Company in the land, under the provisions of G. S. 1894, §§ 6230, 6233. Upon these facts it must be assumed that this hole was drilled solely for the purpose of discovering whether there was ore on the land, and, if so, whether there was a sufficient quantity of it to make mining profitable.

Section 6230, above cited, which is section 2 of the lien law of 1889,[2] provides: "Whoever performs labor or furnishes skill, material or machinery for grading, filling in, or excavating any land or for digging, constructing, altering or repairing any ditch, drain, well, fountain, cistern, reservoir or vault thereon, or for laying, constructing, altering or repairing any sidewalk, curb, gutter or any sewer, waterpipe or gas pipe, whether mains or connections upon any land * * * by virtue of a contract with or at the instance of the owner thereof * * * shall have a lien," etc.

[2] Laws 1889, c. 200.

The contention of the plaintiffs is that drilling or boring this hole constituted an excavation of the land, within the meaning of this statute. In this we think he is in error.

The old lien law gave a lien only for labor or materials for buildings or their appurtenances upon the land, and not for improvements on the soil itself.[3] This was decided in Pratt v. Duncan, 36 Minn. 545, 32 N. W. 709. Section 1 of the act of 1889 (G. S. 1894, § 6229) covers substantially the same ground. But section 2 of that act (G. S. 1894, § 6230), enacted probably in view of the decision in Pratt v. Duncan, was designed to give a lien for labor or material furnished for certain improvements upon the soil itself. It will be observed that all the numerous things specified in that section relate to the permanent improvement or enhancement of the value of the land. The word "excavating" is found in immediate connection with other words of this import,—"grading, filling in, or excavating any land." Grading land, whether by cutting down or filling in, so as to permanently render it more valuable for future use, constitutes an improvement of it; and while drilling a hole in the ground is "excavating," in the broadest sense of the word, yet it is not every hole in the ground that will constitute an excavation for which a lien on the land is given. To cut a furrow with a plow. or to dig a pit in which to bury vegetables during the winter, is to make an excavation in the soil, but it would hardly be claimed that the statute gives a lien on the land for such labor. The word "excavating" is used in this statute in a much more restricted sense. It refers only to excavations in making improvements upon the land.

The right to a lien does not depend upon the size or shape of the excavation, but upon the purpose for which it is made. If it was made in digging a cellar under a building, opening or constructing a mine, or other similar purpose, these might well be considered acts done in making improvements upon the land, for which the party performing the labor would have a lien. The same would be true of labor performed in "stripping" a mine preparatory to getting out the ore, which was the case in Kinney v. Duluth Ore Co., 58 Minn. 455, 60 N. W. 23. But the hole drilled by plaintiffs' assignor was not made for any such purpose. It was not made for the purpose or in the progress of any improvement upon the land.

[3] G. S. 1878, c. 90, § 2.

When made, it did not improve the land, or tend in any way to enhance its value. It was drilled merely for exploring purposes, and to ascertain what the actual value of the land was. When completed, it was of no further use, and constituted no part of any improvement upon the land. It did not constitute an excavation of the land, within the meaning or spirit of the lien law.

This construction finds support in the language of section 5 of the act (G. S. 1894, § 6233). That section was intended, we think, to give a lien upon the interest of the owner of the land, under certain circumstances, for every kind of labor or material (with certain specified exceptions) for which a lien was given by sections 1 and 2 of the act. The legislature, however, did not repeat the enumeration contained in the prior sections, but described them generally, as "every house, mill, manufactory, or other building, or appurtenance, and every structure or other improvement mentioned in sections one and two of this act,"—thus showing that the things which were in mind in the enumeration in section 2 were improvements upon the land.

Judgment affirmed.