Oscar B. **MARTINSON**, Relator,

v.

**UNIVERSITY OF MINNESOTA,**
**Commissioner of Economic**
**Security, Respondents.**

No. C1–85–270.

Court of Appeals of Minnesota.

July 2, 1985.

Oscar B. Martinson, pro se.

Bonita F. Sindelar, Minneapolis, for University of Minnesota.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Relator Oscar B. Martinson seeks review of the Commissioner of Economic Security's determination holding him ineligible to receive unemployment compensation benefits because he was found to be employed. We affirm.

## FACTS

Martinson was employed by the University of Minnesota as an assistant professor in the College of Pharmacy beginning on May 1, 1981. Martinson received a letter from the University dated June 3, 1983, stating that his performance was unsatis-

factory and that he would not be employed beyond June 30, 1984.

In a letter dated August 26, 1983, the University notified Martinson that he would be employed on a terminal appointment for fall quarter 1983. This letter also advised Martinson to expend his unused vacation time.

Martinson filed a complaint with the University Senate Judicial Committee alleging that his termination violated the terms of his employment contract and University, state and federal rules, regulations and statutes. The Committee accepted jurisdiction.

In a letter dated September 28, 1983, to the Committee, the University rescinded its August 26, 1983, letter and accepted Martinson's appointment for the entire 1983–84 school year. The University also requested a written commitment from Martinson that he would fulfill his obligation during that school year.

In March 1984 Martinson and the University entered into a settlement agreement and release of his disputed claim. The agreement provided that Martinson would be compensated at the same rate in the 1984–85 academic year as he had been in the two previous school terms and that health insurance, fringe benefits and retirement benefits would continue until June 30, 1985. The agreement also extinguished the possibility of any future claims against the University.

Under the agreement Martinson was not prohibited from seeking other employment after June 30, 1984. The University did not expect any active employment on its behalf from Martinson during the period from July 1, 1984, through June 30, 1985.

Martinson filed an initial claim for unemployment compensation benefits effective July 8, 1984, and a claims deputy for the Department of Economic Security determined that Martinson was involuntarily separated from his employment for reasons other than misconduct. A Department referee affirmed the claims deputy's determination and held that Martinson was not

disqualified from receiving benefits. The decision of the Department was reversed by the Commissioner, who concluded that Martinson was not separated from his employment as of June 30, 1984, and was therefore not eligible for benefits.

## ISSUE

Was Martinson separated from his employment and eligible for unemployment compensation benefits?

## ANALYSIS

The Employment Services Law was enacted by the Minnesota legislature in 1936 to combat the economic devastation experienced by unemployed persons. The statute declared that because the economic insecurity due to unemployment is a "serious menace to the health, morals and welfare of the people of this state," unemployment reserves are set aside for the "benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1984).

The Unemployment Act defines unemployment as follows:

An individual shall be deemed "unemployed" in any week during which he performs no service and with respect to which no wages are payable to him, or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount. Any individual unemployed as a result of a uniform vacation shutdown shall not be deemed to be voluntarily unemployed. The Commissioner may, in his discretion, prescribe regulations relating to the payment of benefits to such unemployed individuals.

Minn.Stat. § 268.04, subd. 23 (1984).

The Commissioner concluded that during the year covered by the agreement between Martinson and the University, Martinson not only received wages but performed services for the University. The Commissioner stated:

The claimant gave up his asserted right to continue to teach, each and every week of the school year, as a tenure

track professor. This is the service that the University wanted of him and this is the service that claimant agreed to give.

We further hold that the claimant has provided such service since June 30, 1984, and apparently will provide such service until June 30, 1985. The claimant has not been unemployed since June 30, 1984, he has received his salary for each week since then, and he is not entitled to benefits for any such weeks. Section 268.10, subd. 2(6) does not apply to this decision, since the question in this case is not disqualification from benefits; the issue here is whether the claimant is unemployed at all.

Martinson argues that he was involuntarily terminated from his employment as of June 30, 1984, and that the termination was not a leave of absence because it did not contemplate a return to work.

There is no dispute that under the agreement Martinson is receiving an amount equal to his salary and fringe benefits, including health insurance and retirement payable over the period of one year. The parties dispute whether Martinson was providing any services.

The Economic Security Act defines employment as:

> service performed * * * by an individual who is a servant under the law of master and servant or who performs services for any employing unit, unless such services are performed by an independent contractor.

Minn.Stat. § 268.04, subd. 12 (1984).

Martinson argues that because he was not providing any services to the University he was unemployed. The University asserts that Martinson's agreement to forego teaching, his consideration for the agreement, was a "service" provided to the University.

We have noted that the provision of services is not critical for a finding of employment in order to disqualify an employee from receiving benefits. In *Reserve Mining Co. v. Vanderveer*, 368 N.W.2d 361, 363 (Minn.Ct.App.1985), we held that em-

ployees who were laid off and reinstated to receive vacation pay were employed although they provided no services to the employer during the period for which they received vacation pay. Further, the Minnesota Supreme Court has noted that the statute imposes a two-part eligibility test:

> It is clear that from the use of the conjunctive "and" before an individual may be deemed to be unemployed, two things must exist: (1) He must perform no service during the week; and (2) he must be paid no wages for the week.

*Ackerson v. Western Union Telegraph Co.*, 234 Minn. 271, 276, 48 N.W.2d 338, 340 (1951).

 Even if the agreement were determined to provide Martinson with employment at less than full-time, he is still not eligible for benefits. The wage payable to Martinson pursuant to the agreement has been greater than his weekly benefit amount. An individual who engages in less than full-time work but has wages payable to him which are greater than his weekly benefit amount is not eligible for benefits. Minn.Stat. §§ 268.04, subd. 23; 268.08, subd. 1 (1984).

Finally, we note that to provide benefits to someone receiving his full salary and benefits over a period of a year would contradict the purpose of the Act to protect the unemployed from the economic devastation of unemployment. Martinson has suffered no such economic deprivation during the pendency of the agreement he entered into with the University.

## DECISION

Martinson was not unemployed on June 30, 1984, and therefore is not eligible for the receipt of unemployment compensation benefits.

Affirmed.