**Kathe L. LEMMERMAN, Relator,**

**v.**

**ETA SYSTEMS, INC., Commissioner of Jobs and Training, Respondents.**

**No. C8–90–748.**

Court of Appeals of Minnesota.

July 31, 1990.

Kathe L. Lemmerman, Altoona, Wis., pro se.

ETA Systems, Inc., Payroll Tax Dept., St. Paul, for ETA Systems, Inc.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by KALITOWSKI, P.J., and LANSING and MULALLY *, JJ.

## OPINION

KALITOWSKI, Judge.

After relator's employment was terminated, she applied for unemployment compensation benefits, claiming her employment ended when she received her notice of termination and ceased working. The Commissioner of Jobs and Training determined that relator remained employed until the effective date of termination, and that her severance pay should be allocated to the 28 days immediately thereafter. The Commissioner calculated relator's date of eligibility for benefits accordingly. We affirm.

## FACTS

Relator Kathe Lemmerman began working for respondent ETA Systems, Inc. (ETA) in 1985. On April 17, 1989, Lemmerman received a memorandum from ETA, stating that effective immediately, she would no longer be required to be present at work, and that her employment would be terminated effective June 17, 1989. The notice indicated that during the notice period, Lemmerman would continue to receive

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

her regular benefits and pay, and that upon termination, she would be eligible for severance pay.

ETA's severance policy provided that employees would receive thirty days advance written notice prior to an effective date of termination due to work force reduction. The policy also provided that if an employee received more than thirty days notice, the amount of the employee's severance pay would be reduced by one week's pay for each week of additional notice provided to the employee. Under the policy, severance pay would be payable on the effective date of an employee's termination following notice of work force reduction.

After receiving the termination notice on April 17, 1989, Lemmerman ceased working, but continued to receive paychecks every two weeks. On or about June 17, 1989, Lemmerman received her last paycheck from ETA, and a severance check in the amount of $4,538.46.

Lemmerman subsequently filed a claim for unemployment compensation benefits. A claims adjudicator with the Department of Jobs and Training determined that according to statute, Lemmerman's severance pay should be allocated to the 28 days following June 17, 1989, and therefore her date of eligibility for benefits was July 15, 1989.

Lemmerman appealed to a Department referee, who determined that because Lemmerman's last day of actual work was April 17, 1989, her severance pay should be allocated to the 28-day period beginning April 18, 1989. The referee concluded that Lemmerman was eligible to receive unemployment compensation benefits after she received her last regular paycheck on June 17, 1989.

ETA appealed to a Commissioner's representative, who reversed the referee's decision and allocated Lemmerman's severance pay to the 28 days following June 17, 1989. The Commissioner's representative therefore concluded that Lemmerman was not eligible to receive unemployment benefits until July 16, 1989.

Lemmerman has obtained a writ of certiorari, claiming her severance pay should be allocated to the 28-day period beginning April 18, 1989, and that, consequently, her eligibility for unemployment benefits should commence on June 17, 1989.

## ISSUES

1. Did the Commissioner's representative err by determining that Lemmerman's severance pay should be allocated to the 28 days immediately following her last day of employment?

2. Does the record support the Commissioner's determination that Lemmerman did not become unemployed until June 17, 1989?

## ANALYSIS

### I.

■ Minn.Stat. § 268.08, subd. 3(1) (1988) provides:

An individual shall not be eligible to receive [unemployment compensation] benefits for any week with respect to which the individual is receiving, has received, or has filed a claim for remuneration in an amount equal to or in excess of the individual's weekly benefit amount in the form of

(1) * * * severance, or dismissal payment * * * provided any such payment shall be applied for a period immediately following the last day of work but not to exceed 28 calendar days * * *.

Pursuant to this statute, Lemmerman's severance pay must be applied to the 28-day period following her last day of "work." The Commissioner's representative interpreted the term "work" as the equivalent of the term "employment," and concluded that because Lemmerman did not become "unemployed" until June 17, 1989, her severance pay should be allocated to the 28-day period immediately following June 17.

■ We will defer to an agency's interpretation of its own statutes unless such interpretation is in conflict with the express purpose of the statutes and the legislature's intent. *Geo. A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn.1988) (cita-

tions omitted); *see* Minn.Stat. § 645.16(8) (1988). Ascertainment of the legislature's intent is paramount when interpreting statutes. Minn.Stat. § 645.16 (1988).

Although the legislature has not specifically defined the term "work" for purposes of the Minnesota Jobs and Training Law, the legislature has defined the term "insured work" as "employment for employers * * *." Minn.Stat. § 268.04, subd. 17 (1988). This definition lends support to the Commissioner's determination that under the facts of this case, the legislature's use of the term "work" in Minn.Stat. § 268.08, subd. 3(1) may be interpreted as the equivalent of the term "employment."

 We also find persuasive the Commissioner's citation to Minn.Stat. § 268.09, subd. 2 (1988), which appears to equate "work" with "re-employment." Various statutory provisions should be interpreted in light of one another, where those provisions relate to the same subject matter. *Anderson v. Commissioner of Taxation,* 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1959). Under these facts, therefore, we conclude the Commissioner could properly interpret the phrase "last day of work" to mean June 17, 1989, when Lemmerman's employment with ETA was terminated.

## II.

Lemmerman argues that she became "unemployed" on April 17, 1989 when she received the notice of termination. The Commissioner's representative, however, determined that Lemmerman did not become unemployed until June 17, 1989, because she was receiving wages and benefits until that time. This determination is supported by the record and the law.

In *Martinson v. University of Minnesota,* 370 N.W.2d 462 (Minn.App.1985), a teacher performed no services for a year but was paid wages, pursuant to an agreement between the parties. The *Martinson* court held that the teacher remained employed during the one year period, since to be "unemployed," an individual must perform no service *and* must be paid no wages. *Id.* at 464, (quoting *Ackerson v. Western Union Telegraph Co.,* 234 Minn.

271, 276, 48 N.W.2d 338, 340 (1951)); *see* Minn.Stat. § 268.04, subd. 23 (1988). Here, similarly, although Lemmerman did not perform any services after April 17, 1989, she continued to receive her full wages and benefits until June 17, 1989. We therefore agree with the Commissioner's representative that Lemmerman did not become unemployed until June 17, 1989.

## DECISION

The Commissioner properly determined that Lemmerman's severance pay should be applied to the 28–day period following the effective date of her termination.

Affirmed.