**AMOCO PIPELINE COMPANY, a Maine corporation, Appellant,**

v.

**MINNESOTA VALLEY LANDSCAPING, INC., Defendant and Third-Party Plaintiff, Respondent,**

v.

**YOUNG MEN'S CHRISTIAN ASSOCIA-TION OF METROPOLITAN MINNE-APOLIS, Third-Party Defendant, Respondent.**

No. CX–90–2050.

Court of Appeals of Minnesota.

March 19, 1991.

Review Granted May 16, 1991.

Michael S. Ryan, Daniel A. Haws, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Amoco Pipeline Co.

Kevin P. Keenan, Gregory W. Deckert Bassford, Heckt, Lockhart, Truesdell & Briggs, Minneapolis, for Minnesota Valley Landscaping, Inc.

Richard P. Mahoney, Victor E. Lund, Mahoney, Dougherty and Mahoney, Minneapolis, for Young Men's Christian Ass'n of Metropolitan Minneapolis.

Considered and decided by WOZNIAK, C.J., and SHORT, and POPOVICH,* JJ.

## OPINION

PETER S. POPOVICH, Judge.

Amoco Pipeline Company appeals from the denial of its motion for summary judgment and the grant of summary judgment to respondents Young Men's Christian Association of Metropolitan Minneapolis (YMCA) and partial summary judgment to Minnesota Valley Landscaping, Inc. The action was originally commenced by Amoco to recover the repair and clean-up costs associated with the rupture of one of its gasoline pipelines. The pipeline was ruptured by an employee of Minnesota Valley while using a large tree spade to remove trees located on a youth campground owned and operated by the YMCA. The issue raised on appeal is whether the YMCA and Minnesota Valley are immune from liability for damage caused to the pipeline under Minn.Stat. § 116I.07 (1986) because they were engaged in the ordinary conduct of agricultural operations in removing the trees. The trial court ruled in the affirmative. We disagree.

## FACTS

The YMCA owns a wooded tract of land near Monticello, Minnesota, on which it operates a youth campground named Camp Manitou. When this land was donated to the YMCA in 1963, it included a right-of-way easement granted to Amoco for an underground petroleum pipeline crossing the property. At that time, the property was open farmland. The YMCA, however, planted trees in order to provide a border and improve the aesthetics and environment of the property for camping purposes. Significantly, the trees were never planted with the intent of harvesting or selling them.

Minnesota Valley is a commercial and residential landscaping business. Part of its operations include purchasing and harvesting trees for the purpose of resale. The trees are obtained from growing fields and also occasionally from private landowners. As part of their employment, employees are instructed to look for properties with stands of large trees and to contact the landowners about the possibility of their sale. Sometime in early 1985, an employee of Minnesota Valley, Gerald Wallace, contacted the resident manager of Camp Manitou, Mike Melstad, about purchasing and removing trees from the

---

* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

YMCA property. An agreement was made allowing Minnesota Valley to harvest trees on the property.

The record is not clear, but either before or after the agreement was made, employees of Minnesota Valley met with Melstad at the camp. According to Melstad, Allyn Lindstrom, then president of the company, Wallace and another unknown employee were present. Both Allyn and his son David, also an employee of Minnesota Valley, deny that Wallace was present. Both of them, however, agree David was at the meeting. During the meeting, Melstad said he told the Minnesota Valley employees about the existence of the Amoco pipeline and directed their attention to pipeline markers. He also indicated the general direction of the pipeline's path across the property, but said he did not know the exact location. In response, he said the Minnesota Valley employees told him they would locate and avoid the pipeline. Both Allyn and David Lindstrom, however, deny that Melstad informed them about the existence of the pipeline at the meeting. But David does admit that he later learned of the existence of the pipeline from Wallace in the summer of 1985. He also admits he made no attempt to locate or have the pipeline marked then or later.

According to both Melstad and Wallace, Melstad pointed out the existence of the pipeline to Wallace during the summer of 1985. However, Wallace claims Melstad only indicated the general direction of the pipeline to him, and not its exact location, by pointing out some pipeline markers near a county road. But Wallace admitted he could infer from the placement of the markers on each side of the road the pipeline appeared to run diagonally across the YMCA property.

On September 26, 1986, while in the process of removing a tree from the YMCA property with a large hydraulically operated tree spade, Wallace ruptured Amoco's pipeline, releasing a substantial amount of gasoline into the surrounding area. Amoco then commenced this action against Minnesota Valley seeking to recover damages for the cost of repair and replacement of the damaged pipeline, the cost of clean-up, and the value of the lost gasoline. In turn, Minnesota Valley brought a third-party action against the YMCA seeking contribution or indemnity. After the completion of extensive discovery, all parties moved for summary judgment.

On May 29, 1990, the trial court issued its findings of fact, conclusions of law and order for judgment granting the YMCA's motion for summary judgment, but denying the motions of both Amoco and Minnesota Valley. On June 19, 1990, the trial court issued amended findings of fact, conclusions of law and order for judgment granting summary judgment to the YMCA and partial summary judgment to Minnesota Valley, but again denying Amoco's motion. The court based its rulings on Minn. Stat. § 116I.07 (1986), which provides immunity from liability for damage caused to a pipeline by a landowner, or someone acting with his or her authority, while engaged in the ordinary conduct of agricultural operations in the absence of a showing of gross negligence or willful or wanton misconduct. The trial court did not order full summary judgment for Minnesota Valley, determining that questions of fact remained concerning its possible gross negligence in causing the rupture. By consent of the parties, immediate judgment was entered in favor of the YMCA and immediate partial judgment in favor of Minnesota Valley.

## ISSUE

Did the trial court err by granting summary judgment in favor of the YMCA and partial summary judgment in favor of Minnesota Valley?

## ANALYSIS

1. The function of this court on an appeal from summary judgment is "only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Amoco and Minnesota Valley agree on appeal that, at least between them, there are no materi-

al facts in dispute. They only dispute the way in which the trial court construed and applied the statute to the facts in this case. Issues of statutory construction concern questions of law and are subject to de novo review on appeal. *Sorenson v. St. Paul Ramsey Medical Center*, 457 N.W.2d 188, 190 (Minn.1990).

2. The statute being construed in this case is Minn.Stat. § 116I.07 (1986). This statute limits liability for damage caused to pipelines in certain situations and provides in relevant part:

> Any owner or lessee of any real property or any person acting with the authority of that owner or lessee who, in the ordinary conduct of agricultural operations upon that property, causes any injury to any underground pipeline, shall not be liable for any of the direct or incidental costs of repairing, restoring or replacing the pipeline in the absence of a showing of gross negligence or willful or wanton misconduct.

> "Ordinary conduct of agricultural operations", as that term is used in this subdivision, does not include well drilling or other excavation but includes the installation or repair of agricultural drainage tile subject to the provisions of subdivision 2.

Minn.Stat. § 116I.07, subd. 1. An examination of subdivision 1 reveals two basic requirements must be satisfied before a party is not liable for damage caused to an underground pipeline, in the absence of a showing of gross negligence or willful or wanton misconduct. First, the party must have been acting "in the ordinary conduct of agricultural operations," and second, the party must be the owner or lessee of the property or any person "acting with the authority" of that owner or lessee. Here, the issue before the trial court and, therefore, also before us, was whether the harvesting of trees by Minnesota Valley at Camp Manitou constituted ordinary conduct of agricultural operations, and, if so, whether Minnesota Valley was acting with the authority of the YMCA. The issue presented is one of first impression in this state.

In resolving this issue, we are governed by the principle that the primary object in interpreting a statute is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1986); *see also Lemmerman v. ETA Sys., Inc.*, 458 N.W.2d 431, 434 (Minn.App.1990). The intention of the legislature is determined, when the words of a law are not explicit, through the examination of:

> the language used, in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation.

*Grudnosky v. Bislow*, 251 Minn. 496, 498, 88 N.W.2d 847, 850 (1958). However, where the legislative intent is clearly manifested by the plain and unambiguous language of the statute, such examination is neither necessary nor permitted. *See* Minn.Stat. § 645.16; *see also Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967). Here, we conclude that the meaning of the term "in the ordinary conduct of agricultural operations" is plain and unambiguous.

In the absence of a manifested legislative intent to the contrary, the words and phrases in a statute are "construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (1986); *see also State v. Bolsinger*, 221 Minn. 154, 160–61, 21 N.W.2d 480, 486 (1946); *cf. City of St. Louis Park v. King*, 246 Minn. 422, 428–29, 75 N.W.2d 487, 492 (1956) (the meaning of words and phrases should be considered in connection with the subject matter involved). In this case, an examination of the ordinary and recognized meaning of the phrase "in the ordinary conduct of agricultural operations" reveals it is reasonably susceptible of only one meaning, albeit a broad one.

Webster's Third New International Dictionary 43 (1961) defines "agricultural" as "of, relating to, or used in agriculture" or "characterized by or engaged in farming as the chief occupation." The Minnesota Supreme Court has adopted the following definition of "agriculture":

agriculture is the art or science of cultivating the ground, *especially in fields* or in large quantities, including the preservation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of live stock; tillage; husbandry; farming. *Christgau v. Woodlawn Cemetery Ass'n, Winona,* 208 Minn. 263, 279, 293 N.W. 619, 626 (1940) (construing state unemployment compensation statute) (emphasis in original); *see also Fidler v. Zoning Bd. of Adjustment,* 408 Pa. 260, 264–65, 182 A.2d 692, 694–95 (1962); *State v. Ralph Hamel Forest Prods.,* 110 Wis.2d 352, 354, 328 N.W.2d 884, 885–86 (Wis.Ct.App.1982). *See generally* 3 C.J.S. *Agriculture* § 2 (1973). In the broad sense, agriculture also includes forestry. *Ralph Hamel,* 110 Wis.2d at 354, 328 N.W.2d at 886.

▇▇ 3. Applying the above definitions to the statute and facts in this case, it is clear that neither Minnesota Valley nor the YMCA were engaged "in the ordinary conduct of agricultural operations" in harvesting the trees. This is so even though in the broad sense agriculture includes forestry. We construe the phrase as requiring something akin to farming, wherein a crop is planted, raised and harvested, or livestock reared, fed and managed—unlike in this situation. *Cf. Howard County v. Carroll,* 71 Md.App. 635, 649, 526 A.2d 996, 1002 (Md.Ct.Spec.App.1987) (the terms "agriculture," "cultivation" and "farming" are to a large degree synonymous). Here, Minnesota Valley was engaged in a purely economic or commercial activity in harvesting the trees for transplant. It did not raise or grow the trees, but instead merely purchased them for resale and otherwise treated them like any other fungible good bought and sold by a business. The YMCA, on the other hand, did plant and grow the trees. However, these acts alone did not render its conduct to be that of an agricultural operation. The YMCA planted the trees for the purpose of enhancing the use of the land as a campground and not for the purpose of harvesting and sale. *Cf. Christgau,* 208 Minn. at 280, 293 N.W. at 627 ("although clearing land to prepare it for cultivation as a farm is farm work, it does not follow that such work is farm work where it is done in improving and developing a summer resort"). As a result, since neither Minnesota Valley nor the YMCA were engaged in an agricultural operation in harvesting the trees, section 1161.07 does not provide them with immunity against Amoco's suit.

▇▇ This conclusion is supported by the definition of "ordinary conduct of agricultural operations" provided in the second paragraph of subdivision 1 of the statute. That definition provides that "ordinary conduct of agricultural operations" does not include "well drilling or other excavation." The common and ordinary meaning of the word "excavate" is to "make a cavity or hole in, to dig out, hollow out, to remove soil by digging, scooping out, or other means." *Gar–Con Dev. v. State,* 468 So.2d 413, 414 (Fla.Dist.Ct.App.1985), *rev. denied,* 479 So.2d 117 (Fla.1985); *see also Colvin v. Weimer,* 64 Minn. 37, 39, 65 N.W. 1079, 1080 (1896). Here, evidence in the record indicates that when the trees were removed on the YMCA property, holes were left in the ground by the tree spade seven feet wide and four and one-half to five feet deep. In order to fill in these sizeable holes, Minnesota Valley had to use a bulldozer. As a result, given the size of the holes, we conclude the removal of the trees constituted excavation and, therefore, fell within the ambit of the "other excavation" exclusion contained in the statute.[1]

Minnesota Valley argues on appeal that this court should look at the definitions of "agricultural use" contained in sections 17.-

---

1. The YMCA contends that under the rule of ejusdem generis, the term "other excavation" in the statute must be construed as being limited by the phrase "well drilling." The rule of ejusdem generis provides that "[g]eneral words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08(3) (1986). This rule, however, is inapplicable in this case because limiting the term "other excavation" to just "well drilling" would in effect erase that term out of the statute. We are mindful of the rule of statutory construction that "[e]very law shall be construed, if possible, to give effect to *all* its provisions." Minn.Stat. § 645.16 (emphasis added).

81, subd. 4 and 40A.02, subd. 3 of the Minnesota Statutes (1986) to aid in our construction of the definition of "agriculture" in the pipeline statute. We disagree. First, even if the definitions were helpful, it is clear that in this case the property was not being used for the production of trees, timber, or any other agricultural use, but instead was being used only as a recreational camp. Second, the definitions are not helpful because the legislative history of section 116I.07 indicates that the definition of "in the ordinary conduct of agricultural operations" is construed more narrowly, being limited to ordinary or typical farming situations. At a senate committee hearing the author of the bill stated the following:

> Section 7 provides for limitation of liability for unintentional damage to pipelines which may occur in the ordinary work of farming. There was also a provision that with seven day notifications there will be a limitation of liability for those agricultural operators that we call contractors that construct and maintain drainage tile processes. We felt that without something like that the cost of tiling in farms where the pipeline was traversing would become prohibitive because of the possible costs that might occur to the operator. So by giving seven days' notice to the company who would come out and stake out the line, *the tiler would also be included with the farmer and his family and his hired man in the limitation of liability section.*

*Hearing on S.F. No. 332 Before the Agricultural and Natural Resources Committee* (Mar. 27, 1979) (Senator Stezepfandt) (emphasis added).[2]

Because we conclude that neither Minnesota Valley nor the YMCA were engaged "in the ordinary conduct of agricultural operations" in harvesting the trees, which alone necessitates reversal, we need not determine whether Minnesota Valley was "acting with the authority" of the YMCA in doing so. However, for the benefit of the trial court on remand below, we point out that the interpretation of the phrase "acting with the authority" as requiring the existence of an agency relationship, as argued by Amoco on appeal, is supported by the legislative history of the statute. In the statement quoted above, the author of the bill refers to the limitation of liability provision as applying to "the farmer and his family and his hired man." Since an employee is a particular species of agency, this statement implies that a party must be an agent of the farmer or lessee in order to be protected by the statute. *See Kasner v. Gage,* 281 Minn. 149, 152, 161 N.W.2d 40, 42 n. 4 (1968). We note, however, that this construction is called somewhat into doubt by the broadness of the phrase and the possibility that it may include even mere permission.

We also need not address Minnesota Valley's contention on appeal that the trial court incorrectly determined that the YMCA's conduct in relation to the harvesting of the trees was not grossly negligent as a matter of law. We do note, however, that the phrase "gross negligence or willful or wanton misconduct" as used in the statute connotes a very high degree of negligence, and in effect requires some sort of willful misconduct on the part of a party above and beyond just lack of ordinary care. *See High v. Supreme Lodge of the World,* 214 Minn. 164, 170, 7 N.W.2d 675, 679 (1943) ("[G]ross negligence" is "[n]egligence of the highest degree"); *see also Ackerman v. American Family Mut. Ins. Co.,* 435 N.W.2d 835, 840–41 (Minn.App. 1989). *See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and*

---

**2.** Minnesota Valley contends this court cannot consider statements made in senate hearings on appeal because the senate rules bar the court from doing so. The supreme court, however, has specifically rejected this argument, stating that "[w]e should not turn a blind eye to what may be helpful and to what is before us." *Handle With Care, Inc. v. Department of Human Services,* 406 N.W.2d 518, 522 (Minn.1987).

Furthermore, the supreme court has stated that statements made in committee or floor debate by the sponsor of a bill "on the purpose or effect of the legislation are generally entitled to some weight." *Id.; see also In re State Farm Mut. Auto. Ins. Co.,* 392 N.W.2d 558, 569 (Minn.App. 1986) (statements made by sponsor of bill are "given substantial weight in ascertaining legislative intent").

*Keeton on the Law of Torts* § 34 (5th ed. 1984).

## DECISION

The trial court erred in granting summary judgment to the YMCA and partial summary judgment to Minnesota Valley.

Reversed and remanded.

SHORT, Judge (dissenting).

I respectfully dissent because the removal of trees by Minnesota Valley from YMCA property constituted an activity within the "ordinary conduct of agricultural operations" under Minn.Stat. § 116I.07, subd. 1 (1986). *See* Minn.Stat. § 17.81, subd. 4 (1986); Minn.Stat. § 40A.02, subd. 3 (1986); *see also State v. Ralph Hamel Forest Prods.*, 110 Wis.2d 352, 354–55, 328 N.W.2d 884, 885–86 (Wis. Ct.App.1982). The limitation of liability provision contained in section 116I.07, subd. 1, is not restricted solely to the actions of the family farmer. The trial court properly granted partial summary judgment in favor of Minnesota Valley because tree harvesting activities fall within the purview of the pipeline statute.